CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JARED S. BUSZIN (NYBN 5285838)
E. WISTAR WILSON (CABN 324705)
Assistant United States Attorneys

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
Jared.Buszin@usdoj.gov
Wistar.Wilson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>YIMIN "KELLY" LU,<br><br>Defendant. | Case No. 26-CR-128 CRB<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF VENUE<br><br>Hearing Date: August 26, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 6, 17th Floor<br><br>Hon. Charles R. Breyer |

## TABLE OF CONTENTS

**INTRODUCTION** .....1

**RELEVANT BACKGROUND** .....2

A. The Defendant Is Charged in NDCA with Perpetrating an Asylum Fraud Scheme and an NDCA Judge Issues a Warrant for Her Arrest .....2

B. The Defendant Makes a False Declaration After a CDCA Judge Releases Her on Bond and Holds Her to Answer the Charges in NDCA .....2

C. The Defendant Reaffirms Her False Declaration Before an NDCA Judge After Investigators Seize Her Chinese Passport .....3

D. The Instant Case .....4

**ARGUMENT** .....5

I. Legal Standard .....5

II. The Court Should Deny the Defendant's Motion Because Venue Is Proper in this District .....6

A. The NDCA Asylum Fraud Action Is Part of the Essential Conduct of the Charged Offenses .....6

B. The Defendant's Legal Authority Does Not Preclude Prosecution in NDCA .....8

C. The Defendant Continued Her Offense into the Northern District of California .....12

**CONCLUSION** .....13

# TABLE OF AUTHORITIES

## Federal Cases

*Abouammo v. United States*, 146 S. Ct. 1571 (2026) .......... 5, 10, 11, 12

*Hyde v. United States*, 225 U.S. 347 (1912) .......... 6, 7

*In re Palliser*, 136 U.S. 257 (1890) .......... 6, 7, 11

*Lamar v. United States*, 240 U.S. 60 (1916) .......... 6, 12

*United States v. Cabrales*, 524 U.S. 1 (1998) .......... 9, 12

*United States v. Angotti*, 105 F.3d 539 (9th Cir. 1997) .......... 12

*United States v. Candella*, 487 F.2d 1223 (2d Cir. 1973) .......... 13

*United States v. Fortenberry*, 89 F. 4th 702 (9th Cir. 2023) .......... 5, 10, 11, 12

*United States v. McKenna*, 327 F.3d 830 (9th Cir. 2003) .......... 6, 7, 8, 9

*United States v. Reed*, 773 F.2d 477 (2d Cir. 1985) .......... 7, 11

*United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999) .......... *passim*

*United States v. Sampson*, 448 F. Supp. 2d 692 (E.D. Va. 2006) .......... 7

*United States v. Tibbs,* 600 F.2d 19 (6th Cir. 1979) .......... 6

## Federal Statutes

18 U.S.C. § 1519 .......... 10

18 U.S.C. § 1623 .......... 6, 7, 8, 10

18 U.S.C. § 3147 .......... 6, 7, 10

18 U.S.C. § 3237 .......... 5

## Federal Rules and Constitutional Provisions

U.S. Const. Art. III, § 2, Cl. 3 .......... 5

U.S. Const. Amend. VI .......... 8

Fed. R. Crim. P. 5 .......... 8

Fed. R. Crim. P. 18 .......... 5

## Other Authorities

Ninth Circuit Model Jury Instruction 24.16 .......... 6, 7, 8

## INTRODUCTION

Under the Constitution's venue provisions, a criminal defendant must be tried in the district in which her offense "shall have been committed." This mandate is designed to guard against the potential unfairness and hardship involved when an accused is prosecuted in a remote place that has little or no connection to a controversy.

The defendant in this case, Yimin "Kelly" Lu, is a defendant in two separate criminal actions in this district. She was initially charged in the Northern District of California (NDCA) in 2024 for her involvement in a multi-year asylum fraud scheme that she perpetrated through her business, which was located in NDCA. After indictment, an NDCA judge issued a warrant for her arrest and she was located and taken into custody pursuant to that warrant in the Central District of California (CDCA). Because she was arrested in CDCA, the defendant was brought before a magistrate judge in that district, who released the defendant on bond the same day and held her to answer the charges in NDCA. The CDCA magistrate judge also ordered the defendant's bond to transfer to NDCA, and the defendant remains subject to the same bond to this day.

After her sole appearance before a CDCA judge, the defendant filed a declaration in connection with the NDCA prosecution in which she made a false statement about her passport under penalty of perjury. That false declaration was filed in CDCA. The false declaration resulted in the defendant's indictment in this second NDCA prosecution, in which she is charged with making a false declaration in a federal court proceeding, in violation of 18 U.S.C. § 1623(a), and committing that offense while released on bond, in violation of 18 U.S.C. § 3147.

The defendant now moves to dismiss the instant case for lack of venue. The Court should deny the motion for three reasons.

***First***, it has long been recognized that a crime may be prosecuted in any district in which an essential conduct element of the offense occurred, even if other acts constituting elements of the crime were carried out in other districts. Here, the NDCA asylum fraud proceeding is part of the essential conduct of the charged offenses in this case. With respect to the Section 1623(a) offense, the government must establish the defendant appeared in connection with a federal proceeding – the NDCA

asylum fraud prosecution – in order to obtain a conviction. With respect to the Section 3147 offense, the government must establish the defendant appeared and was released in a federal criminal action: the NDCA asylum fraud prosecution. For both statutes, nexus to an underlying federal court proceeding (the NDCA asylum fraud case) is a critical component of the acts constituting the crimes. ***Second***, even if the defendant was physically located in CDCA when she made her false declaration, she was constructively present in NDCA given that the CDCA proceedings were a mere extension of the NDCA asylum fraud prosecution and would not have occurred but for that prosecution. ***Third***, venue is proper in NDCA insofar as the charged crimes constitute continuing offenses because, as discussed below, the defendant did not correct and instead reaffirmed her false declaration when she was physically present in NDCA.

## RELEVANT BACKGROUND

### A. The Defendant Is Charged in NDCA with Perpetrating an Asylum Fraud Scheme and an NDCA Judge Issues a Warrant for Her Arrest

In August 2024, the defendant was charged in a criminal indictment in NDCA with perpetrating a significant, multi-year asylum fraud scheme through her business, Gospel Immigration Service, Inc., which was based in NDCA. *United States v. Jin & Lu*, No. 24-CR-472 (N.D. Cal.) (hereinafter, "Asylum Fraud Action"), Dkt. 1. After the grand jury returned the indictment, an NDCA magistrate judge issued a warrant for the defendant's arrest. Asylum Fraud Action, Dkt. 25.

### B. The Defendant Makes a False Declaration After a CDCA Judge Releases Her on Bond and Holds Her to Answer the Charges in NDCA

The defendant was located in CDCA by federal agents and arrested on August 22, 2024, pursuant to the NDCA warrant. Dkt. 1. Because she was arrested pursuant to the NDCA warrant in CDCA, the defendant was brough before a federal magistrate judge in CDCA for her initial appearance in connection with the NDCA prosecution. *Id.* That same day, the CDCA judge ordered that the defendant be released on bond subject to certain conditions. *Id.*; *see also United States v. Lu*, No. 24-MJ-341-DUTY (C.D. Cal.), Dkt. 3 (minutes and bond). One of those conditions required the defendant to surrender her passports and travel documents to U.S. Pretrial Services by no later than August 26, 2024, and to sign a declaration regarding her passports or other travel documents (a "Form CR-37").

Dkt. 1. In connection with her release, the defendant signed an acknowledgment informing her that violation of her bond conditions could result in a revocation of release and a new prosecution for an additional offense. *Id.*

The minutes from the defendant's initial appearance noted the CDCA court held the defendant to answer in NDCA on the charges in the asylum fraud case, and it specified the date, time, and location of the defendant's initial appearance in NDCA. *United States v. Lu*, No. 24-MJ-341-DUTY (C.D. Cal.), Dkt. 3 at 1. The minutes also noted the defendant's bond would transfer with her to NDCA. *Id.* (checking box stating "Bond to transfer, if bail is posted. Defendant to report on 9/12/24 at 10:30 a.m."). The defendant had no further appearances before any CDCA judge after her initial appearance on August 22, 2024. *United States v. Lu*, No. 24-MJ-341-DUTY (C.D. Cal.).

The same day the defendant was arrested and released on bond, she signed and filed a Form CR-37, under penalty of perjury, stating that she had been issued a Chinese passport that she would surrender to the U.S. Pretrial Services Agency. Dkt. 1. On September 3, 2024, the defendant filed another Form CR-37, which she had signed under penalty of perjury, stating that she was unable to locate her passport and that she would immediately surrender it to the U.S. Pretrial Services Agency if she were to find it. *Id.*

On September 12, 2024, the defendant made her first appearance before an NDCA judge and was arraigned on the indictment. Asylum Fraud Action, Dkt. 10. During that hearing, the NDCA magistrate judge noted the defendant remained subject to the bond conditions that had been set on the date of her arrest. *Id.* ("Defendant remains subject to the bond conditions set by the Central District of CA."). The defendant was also admonished that she was required to surrender her Chinese passport if she located it. *Id.* ("Defendant admonished that she is required to surrender her Chinese [passport] if located.").

### C. The Defendant Reaffirms Her False Declaration Before an NDCA Judge After Investigators Seize Her Chinese Passport

While the Asylum Fraud Action was proceeding, the government identified evidence indicating the defendant had retained her passport in violation of her bond. Dkt. 7 at 2-3. In June 2025, law enforcement executed a search warrant at the defendant's CDCA residence to look for the passport. *Id.*

at 3. Although the defendant initially told agents she did not have the passport, she subsequently admitted that she did and told agents it was located in her car, where agents ultimately found it. *Id.*

On June 9, 2025, U.S. Pretrial Services in NDCA issued a bail violation memorandum concerning the defendant's retention of her passport and a bail review hearing was set. Asylum Fraud Action, Dkt. 39, 40. In advance of that hearing, the defendant submitted a document to the Court arguing that her bond should not be modified. Asylum Fraud Action, Dkt. 49. In that document, the defendant made the following representation to the Court: "In truth, Defendant Lu could not locate her passport in the last year because her youngest child misplaced it. Defendant Lu filed a missing passport police report and did not locate her passport until about two weeks ago—by sheer luck, while she was looking for Defendant Jin's naturalization paper." *Id.* at 4. To corroborate this assertion, the defendant also provided the Court with an unsworn declaration from a self-described tenant at her residence, who claimed he had encountered the defendant the night before agents seized her passport and that at that time, the defendant had held up a Chinese passport and said, "I found my own Chinese passport." Asylum Fraud Action, Dkt. 49 Ex. A.

On July 1, 2025, the Hon. Alex G. Tse held the scheduled bail review hearing. During that hearing, the defendant (through her counsel) reiterated with the Court that she had not previously surrendered her Chinese passport because she could not locate it (as she had so previously affirmed in the September 3, 2024 Form CR-37), but that she had been planning to surrender it after discovering it the night before federal agents executed their search warrant and seized it. Buszin Decl., Ex. A at 15:28–17:28. At the conclusion of the bail review hearing, the Court modified the defendant's bond to provide that she be subject to location monitoring and home detention with certain approved exceptions. Asylum Fraud Action, Dkt. 50.

### D. The Instant Case

On March 24, 2026, a federal grand jury in NDCA charged the defendant in a second indictment with violations of 18 U.S.C. § 1623(a) (false declaration before court) and 18 U.S.C. § 3147(1) (offense committed while on release) based on the defendant's September 3, 2024 declaration regarding her Chinse passport. Dkt. 1.

## ARGUMENT

### I. Legal Standard

The Constitution provides that a criminal defendant shall be tried in the State and district in which her offense "shall have been committed." U.S. Const. Art. III, § 2, Cl. 3; Amend. VI; *see also* Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed."). These provisions are meant to protect against "the unfairness and hardship involved when an accused is prosecuted in a remote place." *Abouammo v. United States*, 146 S. Ct. 1571, 1576 (2026) (quotation marks omitted); *accord United States v. Fortenberry*, 89 F. 4th 702, 711-12 (9th Cir. 2023) (noting that "the Venue Clause operates to protect criminal defendants from being dragged to a trial in some distant state that bears little or no connection to a controversy and then subjected to the verdict of mere strangers" (quotation marks omitted)).

To implement this constitutional rule, courts must determine the charged offense's "essential conduct elements," that is "the things a defendant must do to violate the statute at issue." *Abouammo*, 146 S. Ct. at 1576 (citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279-280 (1999)). Courts must then determine the location of those criminal acts to determine where the offense was committed. *Id.* The determination of where a crime was committed will depend on the nature of the particular crime at issue. *Id.* at 1579 ("Our holding today is discrete and narrow, as our venue decisions usually are, because it is based on the nature of the specific crime charged." (cleaned up)); *Rodriguez-Moreno*¸ 526 U.S. 275 (finding proper venue in New Jersey for crime of using or carrying a firearm during and in relation to a crime of violence where firearms conduct exclusively occurred in Maryland). Courts must consider all "relevant statutory language" in determining the essential conduct elements, which are not necessarily encompassed by the "verbs" in a statute. *Rodriguez-Moreno*¸ 526 U.S. at 279-80.

Where an offense was begun in one district and completed in another, or committed in more than one district, a criminal prosecution may be brought in any district where the "offense was begun, continued, or completed." *See* 18 U.S.C. § 3237(a). The Supreme Court has likewise recognized that, where an essential conduct element spans more than one district, the charged offense may be tried in any district in which the acts underlying an essential conduct element occurred. *Rodriguez-Moreno*, 526

U.S. at 281–82.

For purposes of venue, the Constitution does not require that the defendant be physically present in the prosecuting district when the crime is committed. *In re Palliser*, 136 U.S. 257, 265 (1890). It only confers a "right to be tried in the district . . . wherein the crime shall have been committed," not a right to be tried "where the accused . . . [wa]s personally at the time." *Id.* (cleaned up). Furthermore, the Supreme Court has long held that, in certain contexts, a defendant is properly understood to have a "constructive presence in a State, distinct from a personal presence, by which [his] crime may be consummated." *Hyde v. United States*, 225 U.S. 347, 362 (1912); *see also Lamar v. United States*, 240 U.S. 60, 65-66 (1916) (upholding venue for the offense of falsely pretending to be a federal officer with intent to defraud where the defendant had pretended to be a member of Congress while speaking by phone to a person in the district of prosecution because his "personation took effect there").

## II. The Court Should Deny the Defendant's Motion Because Venue Is Proper in this District

### A. The NDCA Asylum Fraud Action Is Part of the Essential Conduct of the Charged Offenses

By its plain language, the alleged violation of Section 1623(a) has two essential conduct elements: (1) the taking of an oath in or ancillary to a federal court proceeding,[1] and (2) the making of a false declaration while under oath in that proceeding. 18 U.S.C. § 1623(a); *see also United States v. McKenna*, 327 F.3d 830, 838 (9th Cir. 2003) (listing elements); Ninth Circuit Model Criminal Jury Instruction 24.16 (same). The alleged violation of Section 3147 adds an additional conduct element that the defendant committed the charged offense "while released" under the Bail Reform Act. 18 U.S.C. § 3147.

To establish a violation of Section 1623(a), it is not enough for the government to merely prove a defendant made a declaration she knew was false. Rather, the government must prove the additional

[1] An "ancillary proceeding" is "an action conducted by a judicial representative or an action conducted pursuant to explicit statutory or judicial procedures." Ninth Circuit Model Criminal Jury Instruction 24.16 (citing *United States v. Tibbs,* 600 F.2d 19, 21 (6th Cir. 1979), and *United States v. Krogh*, 366 F. Supp. 1255, 1256 (D.D.C. 1973)). As noted in the Ninth Circuit's model jury instruction, an ancillary proceeding is tied to a "main proceeding involving the defendant." *Id.*; *see also Tibbs*, 600 F.2d at 21 n.2 (noting that an ancillary proceeding is "one subordinate to or in aid of another primary action").

conduct that the defendant (i) took an oath before making the false declaration (or made it under penalty of perjury), and (ii) appeared in connection with a federal judicial proceeding in which the false declaration was made. *McKenna*, 327 F.3d at 838; Ninth Circuit Model Criminal Jury Instruction 24.16. Similarly, with respect to Section 3147, it is not enough for the government to prove a defendant committed a federal offense. The government must also prove the additional conduct that the defendant had appeared and been released in a federal criminal action pursuant to the Bail Reform Act at the time the federal offense was committed. 18 U.S.C. § 3147.

For both statutes, nexus to an underlying federal court proceeding is a critical component of the acts constituting the crimes. 18 U.S.C. § 1623(a); 18 U.S.C. § 3147; *accord United States v. Reed*, 773 F.2d 477, 483-84 (2d Cir. 1985) (noting that, if defendant's sworn statements during deposition in federal civil action had not been ancillary to that action, the defendant "could have been prosecuted only in a state court"). That this nexus is "embedded in a prepositional phrase and not expressed in verbs" in the relevant statutes does not detract from the fact that it is a "critical part of" the conduct constituting the offenses. *Rodriguez-Moreno*, 526 U.S. at 280 & 280 n.4.

Here, because the defendant's false declaration was made "in" judicial proceedings that were part of the NDCA Asylum Fraud Action and "while released" on bail in that proceeding, venue is proper in this district. *See Reed*, 773 F.2d at 483 (stating that "perjury in one district in a proceeding ancillary to a proceeding in another district may be prosecuted in either" and noting that "[s]o far as the nature of the crime was concerned, [defendant's] testimony [in San Francisco deposition] was inextricably bound to the [federal civil proceeding in the district of prosecution]"); *United States v. Sampson*, 448 F. Supp. 2d 692, 694 (E.D. Va. 2006) (holding venue proper in EDVA for Section 1623 prosecution arising from allegedly false financial affidavit defendant submitted in connection with NDGA appearance after out-of-district arrest for EDVA prosecution).

Although the defendant may not have been physically present in NDCA at the time she made her false declaration, that is not dispositive. *In re Palliser*, 136 U.S. at 265. At the very least, the defendant had a "constructive presence" in NDCA at the time, *Hyde*, 225 U.S. at 362, particularly where the CDCA proceedings were a mere extension of the NDCA Asylum Fraud Action and where the

defendant's false declaration was made *after* her sole court appearance in CDCA and *after* she had already been held to answer in NDCA with her bond to transfer with her as well.

In her motion, the defendant erroneously argues that, as relevant here, the "sole essential conduct element" of the alleged Section 1623(a) offense is the making of the false declaration. Dkt. 10 at 5-7. This myopic interpretation makes the same mistake the Supreme Court identified in *Rodriguez-Moreno* insofar as it focuses solely on the verbs in the statute "to the exclusion of other relevant statutory language." *See Rodriguez-Moreno*, 526 U.S. at 279-80. Section 1623(a) does not merely prohibit the making of a false declaration. The "nature of the crime" at issue, *id.* at 279, is the making of such declarations under oath (or penalty of perjury) and "in" a federal court proceeding, 18 U.S.C. § 1623(a).[2] And here, the only proceeding at issue was the NDCA Asylum Fraud Action.

Although the defendant was brought before a CDCA magistrate judge because she was arrested in that district, the CDCA court was only performing its required duties for defendants arrested in a district other than the one where they were charged with an offense. Fed. R. Crim. P. 5(c)(3). The defendant's appearance before the court in CDCA would not have occurred but for her indictment in the NDCA Asylum Fraud Action. As a surrogate for the NDCA magistrate judge under Rule 5(c), the CDCA magistrate judge conducted the initial appearance on the NDCA indictment, released the defendant with conditions pending the NDCA trial, and, as required, ordered the defendant transferred to NDCA for trial, transmitting the papers to the NDCA clerk. Fed. R. Crim. P. 5(c)(3)(D), (3)(E), (d)(3). The defendant remained subject to that same release order after her transfer to NDCA and throughout the criminal proceedings here. Accordingly, venue is proper in this district.

**B. The Defendant's Legal Authority Does Not Preclude Prosecution in NDCA**

In support of her motion, the defendant principally relies on the Supreme Court's prior decisions in *United States v. Cabrales,* 524 U.S. 1 (1998), and *Abouammo v. United States*, 146 S. Ct. 1571 (2026), as well as the Ninth Circuit's decision in *United States v. Fortenberry*, 89 F.4th 702 (9th Cir.

[2] Just as in *Rodriguez-Moreno*, the government must prove the embedded prepositional phrase linked to the statute's verb(s) to secure a conviction. *Compare Rodriguez-Moreno*, 526 U.S. at 280 (explaining that the government needed to prove the defendant "used the gun 'during and in relation to' the kidnapping of" the victim), *wih McKenna*, 327 F.3d at 838 (listing elements of Section 1623(a) offense), and Ninth Circuit Model Criminal Jury Instruction 24.16 (same).

2023). None of those decisions involved the specific statutes at issue in this case, and none of those decisions precludes prosecution in this district.

First, *Cabrales* does not support the defendant's claim that the false declaration itself is the only essential conduct element for a Section 1623(a) prosecution. In *Cabrales*, the Supreme Court held that venue for a prosecution for certain substantive money laundering offenses lay where the prohibited financial transactions took place, and not where the crimes that generated the tainted money beforehand were committed. 524 U.S. at 3-4. In doing so, the Supreme Court emphasized that the acts constituting the offenses included only the financial transactions at issue; the defendant need not have committed the underlying crimes that were the source of the laundered funds. *Id.* at 7.

A prosecution under Section 1623(a), by contrast, requires proof that the defendant made the predicate false declaration "in a proceeding before or ancillary to any court of the United States" in which the defendant herself had personally appeared. *McKenna*, 327 F.3d at 838. Moreover, in *Cabrales,* the substantive money-laundering offenses, as charged in the indictment, alleged no factual link between the defendant and the district of indictment and trial. *See* 524 U.S. at 3 ("The counts before us portray [Cabrales] and the money she deposited and withdrew as moving inside Florida only."). But here, the indictment unmistakably links the defendant's actions to the NDCA Asylum Fraud Action. *See* Dkt. 1.

Finally, in *Cabrales*, the substantive money laundering offenses related to proceeds from separate offenses that were begun and had been completed elsewhere before the subsequent money laundering conduct occurred. 524 U.S. at 8. This rendered these other offenses mere "circumstance element[s]." *Rodriguez-Moreno*, 526 U.S. at 280 n.4 (discussing *Cabrales*). By contrast, the false declaration at issue in this case was made in the course of ongoing proceedings in the NDCA Asylum Fraud Action and after the defendant had made her appearance in that case. This further reinforces NDCA as a proper venue to prosecute the offense. *See Rodriguez-Moreno*, 526 U.S. at 280 n.4 (explaining that "the existence of criminally generated proceeds was a circumstance element of the offense" where "the proscribed conduct—defendant's money laundering activity—occurred after the fact of an offense begun and completed by others," and contrasting that with a violation of 18 U.S.C.

§ 924(c)(1) and its requirement that the use or carrying of a firearm be "during and in relation to" a crime of violence (cleaned up)).

Second, the defendant's reliance on *Abouammo* to suggest that venue lies only where the defendant's false declaration is made is similarly unavailing. In *Abouammo*, the Supreme Court held in a "discrete" and "narrow" decision that a defendant charged with falsifying a document with intent to obstruct a federal investigation, in violation of 18 U.S.C. § 1519, must be tried in the district where the falsification occurred and not in a different district where the crime's "contemplated effects" occurred. 146 S. Ct. at 1577-79. Unlike in *Abouammo*, the government does not claim here that venue is proper based on the crime's *mens rea* element or the crime's "contemplated effects" in NDCA. Instead, it argues that venue is proper here because the conduct constituting the offense—the making of a false declaration "in" the NDCA Asylum Fraud Action and while on bail in that proceeding—requires a factual nexus to the defendant's appearance in a proceeding in this district and should be properly understood as having occurred here. This view comports with *Abouammo*'s holding that venue lies in locations where "the conduct constituting the offense—the things a defendant must do to violate the statute at issue" occurred.[3] *Id.* at 1576.

The Ninth Circuit's *Fortenberry* opinion is similarly distinguishable. That decision, which concerned a false statements prosecution under 18 U.S.C. § 1001, addressed whether a statement's "materiality" was an essential conduct element with respect to a Section 1001 offense. 89 F.4th at 706. The Ninth Circuit held that materiality was not an essential conduct element because "[m]ateriality . . . does not require anything to happen." *Id.* at 707. Here, the government does not seek to retread this ground in the context of Section 1623(a)'s materiality requirement. Instead, the government's argument is that the statute's embedded prepositional phrase "in any proceeding before or ancillary to any court or grand jury of the United States" is part of the essential conduct that must be proven to establish a

---

[3] The statute at issue in *Abouammo*, 18 U.S.C. § 1519, is very different from the statutes at issue here. Section 1623(a) and Section 3147 include relevant prepositional phrases unrelated to *mens rea* that are linked to the statutes' verbs. *See* 18 U.S.C. § 1623(a) ("Whoever under oath…in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes…."); 18 U.S.C. § 3147 ("…committed while released…."). Section 1519, by contrast, contains no such prepositional phrases. *See* 18 U.S.C. § 1519 ("Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object….").

Section 1623(a) offense. And unlike materiality, that portion of the statute does "require [some]thing to happen," *id.*, namely that the defendant appear in the federal proceeding in which the false declaration is made.

Finally, in support of her motion, the defendant asks the Court in a footnote to reject the Second Circuit's holding in *Reed*, which appears to be the only federal appellate decision to have directly addressed the issue of venue for a Section 1623(a) prosecution. The defendant contends *Reed* was wrongly decided because the Second Circuit's analysis took into account considerations such as "the locus of the effect of the criminal conduct" and "the suitability of each district for accurate factfinding." Dkt. 10 at 5 n.2. This argument fails for several reasons.

First, the defendant ignores the fact that the analysis in *Reed* considered "the site of the defendant's acts" and "the elements and nature of the crime," 773 F.2d at 481-82, which is consistent with the analytical framework subsequently reaffirmed by the Supreme Court. *Rodriguez-Moreno*, 526 U.S. at 279 ("[T]he *locus delicti* of the charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it." (cleaned up)); *accord Abouammo*, 146 S. Ct. at 1576-77. In considering the elements and nature of the crime, the panel in *Reed* noted that the defendant's giving of perjured testimony in one district was "inextricably bound" to the underlying court proceeding in the district of prosecution, which had given rise to the perjured testimony at issue. *Reed*, 773 F.2d at 483. The Second Circuit's conclusion that this supported venue in the district where the underlying proceeding was located is consistent with the Supreme Court's subsequent admonition that venue analysis should not turn solely on a "verb test . . . applied rigidly, to the exclusion of other relevant statutory language," which would "unduly limit[] the inquiry into the nature of the offense." *Rodriguez-Moreno*, 526 U.S. at 280.

Second, although *Reed* also considered the "the locus of the effect of the criminal conduct," 773 F.2d at 481, the defendant identifies no authority for her suggestion that this is an impermissible factor. The Supreme Court has observed that a defendant may properly be prosecuted where her conduct ultimately took effect. *See, e.g.*, *Palliser*, 136 U.S. at 265-66 ("It is universally admitted that, where a shot fired in one jurisdiction strikes a person in another jurisdiction, the offender may be tried where the

shot takes effect . . . ."); *Lamar*, 240 U.S. at 66 (venue for offense of falsely pretending to be a federal officer with intent to defraud through a phone call proper in district where phone call received because "personation took effect there").

In *Abouammo*, the Supreme Court did not categorically reject consideration of a crime's effects in determining venue. 146 S. Ct. at 1577-78. Rather, it rejected the Ninth Circuit's consideration of an offense's "contemplated effects" in a district as a basis for venue, where the relevant statute's concern with such effects was "confined to the defendant's *mens rea*" and the relevant statute did "not require that falsifying a document have any impact at all on an investigation." *Id.* Indeed, in *Fortenberry*, which predated *Abouammo* by only a few years, the Ninth Circuit expressly noted the "Supreme Court ha[d] left open the broader questions of whether and when an effects-based venue might be permissible." *Fortenberry*, 89 F.4th at 708. The *Fortenberry* panel further noted that an offense involving the obstruction of a judicial proceeding could be properly venued where the affected proceeding was located. *Id.* at 709 ("In a similar vein, the obstruction of justice statute expressly prohibits 'endeavors to influence, obstruct, or impede, the due administration of justice,' 18 U.S.C. § 1503(a), and so venue might be proper in the jurisdiction where the affected judicial proceeding is being held . . . ." (citations omitted)). *Reed* reached the same conclusion. The decision is fully consonant with *Fortenberry* and not foreclosed by *Abouammo*.

**C. The Defendant Continued Her Offense into the Northern District of California**

In the alternative, venue is proper in this district insofar as the defendant's violation constituted a continuing offense under 18 U.S.C. § 3237(a). The circumstances of a violation, rather than the terms of a statute, determine whether a violation is a continuing offense. *See Cabrales*, 524 U.S. at 8 (observing that while money laundering "arguably might rank as a 'continuing offense,' triable in more than one place, if the launderer acquired the funds in one district and transported them into another," it was "tellingly not this case" since "[i]n the counts at issue, the Government indicted Cabrales 'for transactions which began, continued, and were completed only in Florida.'").

Under certain circumstances, a false statement offense can constitute a continuing offense that implicates more than one jurisdiction. *United States v. Angotti*, 105 F.3d 539, 542 (9th Cir. 1997)

(finding proper venue in district where false statements were received and noting that "the act of making a communication continues until the communication is received by the person or persons whom it is intended to affect or influence"); *United States v. Candella*, 487 F.2d 1223, 1227-28 (2d Cir. 1973) (holding that perjured statements fell within § 3237(a) based on circumstances and noting that "venue is properly laid in 'the whole area through which force propelled by an offender operates.'" (quoting *United States v. Johnson* 323 U.S. 273, 275 (1944)).

Here, even if the Court were to conclude the sole essential conduct element is the defendant's making of the false declaration and that this conduct occurred exclusively in CDCA, the Court should not grant defendant's motion because the defendant continued her offense into this district when she (i) failed to act when the NDCA magistrate judge admonished her to surrender her passport if she located it, and then (ii) unequivocally reaffirmed her false declaration in connection with the 2025 bail review proceedings that occurred after her passport was seized.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny the defendant's motion to dismiss the indictment for lack of venue.

DATED: August 7, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/S/*
JARED S. BUSZIN
E. WISTAR WILSON
Assistant United States Attorneys