JODI LINKER
Federal Public Defender
Northern District of California
NED SMOCK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700
Facsimile: (415) 436-7706
Email: Ned_Smock@fd.org

Counsel for Petitioner Yimin "Kelly" Lu

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>YIMIN "KELLY" LU,<br>Defendant. | **Case No.:** CR 26-128 CRB<br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT FOR LACK OF VENUE**<br>**Court:** Courtroom 6, 17th Floor<br>**Date:** August 26, 2026<br>**Time:** 10:00 a.m. |

# CONTENTS

INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 2

I. Making or using a false material statement or declaration in a judicial or ancillary proceeding is §1623's sole essential conduct element. ........................................................ 2

A. Judicial proceedings are not "conduct." ........................................................ 3

B. The government attempts an end-run around *Fortenberry* and *Abouammo*. ........ 5

C. The relevant judicial proceedings occurred in the Central District. ..................... 7

D. Ms. Lu was not "constructively present" in this district by virtue of her pending fraud prosecution. ........................................................ 8

II. The Court may not uphold venue on a factual and legal theory not passed upon by the grand jury in the Indictment, which would amount to constructive amendment. ........... 10

CONCLUSION ........................................................ 12

## TABLE OF AUTHORITIES

**Federal Cases**

*Abouammo v. United States*,
146 S. Ct. 1571 (2026) ........ *passim*

*Hyde v. United States*,
225 U.S. 347 (1912) ........ 8, 9, 10

*In re Palliser*,
136 U.S. 257 (1890) ........ 3, 6

*Lamar v. United States*,
240 U.S. 60 (1916) ........ 8, 9

*United States v. Abouammo*,
122 F.4th 1072 (9th Cir. 2024) ........ 12

*United States v. Angotti*,
105 F.3d 539 (9th Cir. 1997) ........ 10, 11, 12

*United States v. Bowens*,
224 F.3d 302 (4th Cir. 2000) ........ 3-4

*United States v. Cabrales*,
524 U.S. 1 (1998) ........ 1, 6

*United States v. Candella*,
487 F.2d 1223 (2d Cir. 1973) ........ 10, 11, 12

*United States v. Davis*,
854 F.3d 601 (9th Cir. 2017) ........ 11

*United States v. Fortenberry*,
89 F.4th 702 (9th Cir. 2023) ........ *passim*

*United States v. Hinton*,
222 F.3d 664 (9th Cir. 2000) ........ 11

*United States v. Reed*,
773 F.2d 477 (2d Cir. 1985) ........ 6

*United States v. Rodriguez-Moreno*,
526 U.S. 275 (1999) ........ 1, 3, 4, 6

*United States v. Rosser*,
528 F.2d 652 (D.C. Cir. 1976) ........ 9

*United States v. Shipsey*,
190 F.3d 1081 (9th Cir. 1999) ........ 11

*United States v. Socony-Vacuum Oil Co.*,
310 U.S. 150 (1940) .......... 9

*United States v. Ward*,
747 F.3d 1184 (9th Cir. 2014) .......... 11

**Federal Rules**

Fed. R. Crim. P. 5 .......... 1, 7, 8
Fed. R. Crim. P. 12 .......... 11
Fed. R. Crim. P. 20 .......... 8

**Federal Statutes**

18 U.S.C. § 924 .......... 1, 4
18 U.S.C. § 1001 .......... 3, 5, 7, 12
18 U.S.C. § 1014 .......... 11
18 U.S.C. § 1512 .......... 7
18 U.S.C. § 1519 .......... *passim*
18 U.S.C. § 1623 .......... *passim*
18 U.S.C. § 3147 .......... 1
18 U.S.C. § 3237 .......... 10

## INTRODUCTION

The Constitution "twice safeguards" a person's right to stand trial in the district where their alleged crime was "committed." *United States v. Cabrales*, 524 U.S. 1, 6 (1998). In *Abouammo v. United States*, 146 S. Ct. 1571 (2026), the Supreme Court reaffirmed that a crime is "committed" for venue purposes where the acts constituting the crime's essential *conduct* elements occurred.

While paying lip service to the Supreme Court's venue jurisprudence, the government invites this Court to flout it. Relying on the statutory requirement that the false statement or declaration be made or submitted "in" federal judicial proceedings or ancillary, 18 U.S.C. § 1623(a), the government invites the Court to hold that the proceedings are "a critical component of the acts constituting the crime." *See* Docket No. 13, United States' Opposition to Defendant's Motion to Dismiss for Lack of Venue ("Opp.") at 2.[1]

The government relies on *United States v. Rodriguez-Moreno*, 526 U.S. 275 (1999), where the Supreme Court held that 18 U.S.C. § 924(c) has two separate conduct elements: the using and carrying of a firearm and the commission of a crime of violence (there kidnapping). But a judicial proceeding or an ancillary proceeding "is not separate conduct akin to kidnapping or another action by a criminal defendant, and so cannot play a role in determining the locus delicti for purposes of venue." *United States v. Fortenberry*, 89 F.4th 702, 707 (9th Cir. 2023).

In any event, the relevant judicial proceedings here occurred in the Central District of California, and those distinct proceedings, governed by the specific provisions in Fed. R. Crim. P. 5(c), were not "part of" and a mere "extension" of Ms. Lu's fraud prosecution in this district, as the government claims. Ms. Lu's offense was *committed and completed* when she submitted the

---

[1] The government makes a similar argument based 18 U.S.C. § 3147, Opp. at 6-7, which provides for a sentence of up to 10 years for a felony, consecutive to any other sentence of imprisonment, if the offense was "committed while released." It is unclear whether the government claims that Ms. Lu is charged with a separate count under § 3147; **the Indictment charges Ms. Lu with only one count (§ 1623) and gives "notice of special sentencing factor" under § 3147. Indictment ¶ 12**.

In any event, the government agrees that venue in this case rises and falls with the § 1623 charge. That is correct: § 3147 requires that an offense be committed; the "released" status is a circumstance element, not conduct; and the Indictment in any event charges that Ms. Lu "was ordered released by a United States Magistrate Judge in the C.D. Cal. Proceedings," following bail proceedings in that district.

purportedly false "Form CR-37" in the C.D. Cal. Proceeding, and venue was only proper there.[2]

Finally, Ms. Lu was not "constructively present" in this district by virtue of her fraud prosecution. The Supreme Court has never endorsed the legal fiction of "constructive presence" outside the context of conspiracy, and Ms. Lu is not charged with conspiracy to commit § 1623 offense in this district.

And when all of this fails, the government invites the Court to uphold venue on a factual and legal theory not passed upon by the grand jury: that Ms. Lu's offense purportedly continued in this district in June and July of 2025, when she appeared for bail review proceeding before the Court. But the Indictment charges only that "[o]n or about September 3, 2024," Ms. Lu "in a declaration under penalty of perjury submitted in a bail proceeding ancillary to the N.D. Cal. proceeding, knowingly made a false declaration. . . ." Indictment ¶ 11. The Court may not constructively amend the indictment, in violation of Ms. Lu's Fifth Amendment rights, to suit the government's needs.

For all these reasons, the Court must dismiss the Indictment. Critically, that would not leave the government without a remedy: they may prosecute Ms. Lu in the Central District of California, where venue is proper.

## ARGUMENT

### I. Making or using a false material statement or declaration in a judicial or ancillary proceeding is § 1623's sole essential conduct element.

The government acknowledges that the constitutional test for venue requires identifying the "essential *conduct* elements" of an offense—that is, "the *acts* that the prosecution must prove to secure a conviction," or, in even plainer terms, "the things a defendant must *do* to violate the statute at issue," —then ascertaining "the 'location' of those 'criminal *acts*.'" *Abouammo*, 146 S. Ct. at 1576-77 (emphases added). And, as explained in Ms. Lu's motion, the only *conduct* that § 1623 prohibits is *making a false declaration* of a material fact under oath or *making or using a document that includes a false declaration* that is material and sworn under the penalty of perjury, "in any proceeding before or ancillary to any court or grand jury of the United States." § 1623 (a). Because

[2] This form appears unique to the Central District of California. *See* https://apps.cacd.uscourts.gov/cm-api/dwwwroot/CR-37.pdf.

Ms. Lu is charged with submitting a false Form CR-27 in bail proceedings in the Central District of California, the location of her alleged conduct was there, and not in this district.[3]

The government disagrees. Relying on the fact that the false statement or declaration must be "under oath" and made or made or submitted "in connection with a federal judicial proceeding,"[4] the government argues that "nexus to an underlying federal court proceedings is a critical component of the acts constituting the crimes." Opp. at 7 (citing *Rodriguez-Moreno*, 526 U.S. at 280 & n.4). The government then claims that "because the defendant's false declaration was made 'in' judicial proceedings *that were part of the NDCA Asylum Fraud Action* and 'while released' on bail in that proceeding, venue is proper in this district." *Id*. (emphasis added). Relatedly, the government argues that Ms. Lu was "constructively present" in this district court although she made her false declaration in the Central District. Opp. at 7-8. The government is wrong.

**A. Judicial proceedings are not "conduct."**

Ms. Lu agrees that some "proceeding before or ancillary to any court or grand jury of the United States" is an element of the offense, and that the government must prove beyond a reasonable doubt at trial that the false statement or declaration was made or filed in such proceedings. But not every element is an "essential *conduct* element." The Supreme Court made this point in *Rodriguez-Moreno*, where it distinguished between "*conduct* elements" and "*circumstance* elements." *See* 526 U.S. at 280 n.4 (emphasis added) (explaining that, in money laundering offenses, "[t]he existence of criminally generated proceeds was a circumstance element of the offense," whereas "the proscribed conduct" was the money laundering activity); *see also Fortenberry*, 89 F.4th at 707 (the "materiality" of a false statement in an 18 U.S.C. § 1001 offense is a circumstance element); *United States v.*

---

[3] The government correctly states that venue lies where the offense was "committed," and not necessarily where the defendant resides or was physically present at the time the offense was "committed." Opp. at 6 (citing *In re Palliser*, 136 U.S. 257, 265 (1890)). But that only begs the question where the offense was "committed" – a question governed by the essential conduct element test.

[4] The government argues that the defendant must have "appeared in connection with a federal judicial proceeding." Opp. at 7. It is not clear what the government means by "appear," and § 1623 does not use this term. Regardless, Ms. Lu agrees that the prohibited conduct must be "in" judicial proceedings or ancillary proceedings.

*Bowens*, 224 F.3d 302, 309 (4th Cir. 2000) (the "issuance of [the] federal arrest warrant" in a prosecution for harboring a fugitive from arrest under 18 U.S.C. § 1071 is a circumstance element).

"The question of venue," therefore, "is answered by determining which of the[] statutory elements is the essential conduct of a Section [1623] offense, and which is a 'circumstance element' that is necessary for a conviction but not a factor in deciding the location of the offense for venue purposes." *Fortenberry*, 89 F.4th at 705. Framed this way, the answer is clear: the making or use of a false statement or declaration is the essential conduct, while the judicial proceeding or proceedings ancillary to such proceeding is a circumstance element. Only the former requires conduct (or action or doing), whereas the latter is an extrinsic fact (or circumstance) that must exist at the time of the defendant's conduct, but it is not conduct itself.

The government would have the Court conclude otherwise. It correctly points out that, to identify the essential conduct elements, courts must not focus solely on the verbs in the statute, and then concludes that because the false statement or declaration must be made or submitted "in" some proceeding, the proceeding "is a critical component of the acts constituting the crimes." Opp. at 7-8.

True, focusing exclusively on verbs when identifying the essential conduct elements "creates a danger that certain conduct prohibited by statute will be missed." *Rodriguez-Moreno*, 526 U.S. at 280. For example, in *Rodriguez-Moreno*, the Supreme Court held that a § 924(c)(1) offense for using or carrying a firearm "during and in relation to any crime of violence" (there, kidnapping) "contain[s] two distinct conduct elements—as is relevant to this case, the 'using and carrying' of a gun and the *commission of a kidnaping*." *Id*. (emphasis added). That is because § 924(c)(1) "criminalized a defendant's use of a firearm 'during and in relation to' a crime of violence" and "in doing so, Congress *proscribed both the use of the firearm and the commission of acts that constitute a violent crime*." *Id*. (emphasis added). "That the crime of violence element of the statute is embedded in a prepositional phrase and not expressed in verbs d[id] not dissuade [the Court] from concluding that *a defendant's violent acts* are essential conduct elements." *Id*. (emphasis added).

Though the "essential conduct elements" of a particular crime may go beyond the "verb[s]" in the statute, *id*. at 280, *Rodriguez-Moreno* emphatically shows they must still involve *conduct*. But a federal judicial proceeding or a proceeding ancillary to a judicial proceeding "is not separate conduct

akin to kidnapping or another action by a criminal defendant, and so cannot play a role in determining the locus delicti for purposes of venue." *Fortenberry*, 89 F.4th at 707.

### B. The government attempts an end-run around *Fortenberry* and *Abouammo.*

It is worth noting that, if the government were correct and non-conduct such as judicial proceedings were a "critical component of the acts constituting the crime" because the acts must be accompanied by other requirements, Opp. at 7, then both *Fortenberry* and *Abouammo* would have been decided differently. That is further reason to reject the government's rule.

*Fortenberry* held that, for a § 1001 offense, the materiality of the false statement made in a matter within the jurisdiction of a federal agency, is not part of the prohibited conduct, although it is a "key element" and, by virtue of being an "intrinsic" quality of the statement, inextricably connected with the making of the statement. *See* 89 F.4th at 706-707 (materiality requires that the "statement have the capacity to influence a federal agency"). Under the government's reasoning, then, materiality would be "a critical component of the acts constituting" an § 1001 offense. The Ninth Circuit decided otherwise.

Ironically, the government claims that it "does not seek to retread this ground in the context of Section 1623(a)'s materiality requirement." Opp. at 10. Of course, it can't—materiality has the same meaning in both § 1001 and § 1623. Instead, the government seeks to accomplish the same result by arguing that the *judicial proceedings* are part of the prohibited conduct because "the defendant must appear in the federal proceedings," Opp. at 10-11—more accurately, that the false statement or declaration must be made or submitted "in any proceeding before or ancillary to" federal judicial proceedings. § 1623(a). But the same is true for § 1001—the false statement must be made "in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." § 1001. That was irrelevant to the Ninth Circuit's reasoning and outcome even before *Abouammo*, which only confirmed *Fortenberry*'s mode of analysis.

The government takes a similar tack with *Abouammo*. It argues that its brief "comports with *Abouammo*," because its venue argument is not "based on the crime's *mens rea* element of the crime's 'contemplated effects' in NDCA," but based on the factual nexus to a proceeding in this district. Opp. at 10. But § 1519 also requires such a nexus – "[t]hat statute makes it a crime to

knowingly falsify a document with the intent to obstruct a federal investigation." *Abouammo*, 146 S. Ct. at 1574-75. Indeed, at the government's urging, the Ninth Circuit held that "§ 1519's intent requirement—i.e., 'with the intent' to 'obstruct' an investigation—makes the 'contemplated effects' of the falsification another 'part of the essential conduct of [a § 1519] offense.'" *Id*. at 1576. The Supreme Court disagreed: "a defendant charged with violating § 1519 must be tried in the district where the falsification occurred; he cannot be tried in a different district where the investigation was located." *Id*. at 1575. Under the government's rule, *Abouammo* was wrongly decided.

No matter, says the government, this Court should ignore binding Supreme Court and Ninth Circuit precedent and instead follow the Second Circuit's decision in *United States v. Reed* – pre-*Cabrales* (and *Rodriguez-Moreno* and *Abouammo*), non-binding authority that employed a "substantial contacts rule" that considered "a number of factors: the site of the defendant's acts, the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding." 773 F.2d 477, 481 (2d Cir. 1985). The government claims that *Reed* is "fully consonant with *Fortenberry* and not foreclosed by *Abouammo*." Opp. at12. Of course it's not: it applied the *wrong test*.

The government, for instance, acknowledges that *Reed* considered the effects of the criminal conduct, but points out that the Supreme Court has "observed that a defendant may properly be prosecuted where her conduct ultimately took effect." Opp. at 11 (citing *Palliser*, 136 U.S. at 265-66) ("It is universally admitted that, where a shot fired in one jurisdiction strikes a person in another jurisdiction, the offender may be tried where the shot takes effect . . . ."). But murder (which is what *Palliser* discussed) is defined in terms of its effects: without the victim's death, following their being shot, there is no killing. Put in modern terms, the essential conduct element of murder is not complete until and unless the victim dies. *Palliser*, thus, does not supplant the essential conduct element test, but it is consistent with it.

Critically, the Supreme Court in *Abouammo* already rejected the government's argument here. As noted, the Ninth Circuit upheld venue in that case based on the offense's "contemplated effects." The Supreme Court reversed because, inter alia, § 1519 "does not require that falsifying a document have any impact at all on an investigation—that it in fact obstruct or impede an investigation, present

or future. . . So whatever obstructive effects Abouammo's false invoice may have had in northern California, they were not elements of his crime. And because that is so, those effects cannot figure in determining where Abouammo's "crime [was] committed." 146 S. Ct. 1578. The Court also noted that § 1519 "thus differs from many federal laws barring *actual obstruction*. *See*, *e.g*., 18 U.S.C. § 1512(c)(2)." *Id*. (emphasis added).

Like § 1519, § 1623 does not require that the false statement or declaration have any effect on the relevant proceedings; the offense is committed and completed at the time the false statement is made or the false declaration submitted, regardless of whether they have any impact on the proceedings. *See id*. The closest § 1623 comes to any "effects" is through its materiality element. But, like in the § 1001 context, "the false statement offense is complete when the statement is made. It does not depend on subsequent events or circumstances, or whether the recipient of the false statement was in fact affected by it in any way." *Fortenberry*, 89 F.4th at 707.

In short, *Abouammo* and *Fortenberry* foreclose the government's arguments here, including its invitation for the Court to consider § 1623's potential effects. The Court should hold that making or using the false statement or declaration is the sole conduct element of § 1623.

**C. The relevant judicial proceedings occurred in the Central District.**

As the government implicitly acknowledges, even assuming *arguendo* that some judicial proceedings or ancillary proceedings are an essential conduct element of § 1623, it cannot prevail unless the charged proceedings were "committed" in this district. They did not: the Indictment charges a false declaration in "bail proceedings *ancillary to* the N.D. Cal. Proceeding,"—that is, "*bail proceedings in the C.D. Cal. Proceeding* that was ancillary to the N.D. Cal. Proceeding," Indictment ¶¶ 9, 11.

Undeterred, the government claims that Ms. Lu's Rule 5(c) proceeding in the Central District were "part" of her fraud prosecution in this district *Id*.; *see also* id. at 8 ("And here, the only proceeding at issue was the NDCA Asylum Fraud Action"; the CDCA magistrate acted "[a]s a surrogate for the NDCA magistrate under Rule 5(c)"). But the government cannot change the indictment to suit its needs, now that Ms. Lu pointed out facial deficiencies in the indictment. *See infra* Argument Section II.

In any event, the government is wrong that Rule 5(c) proceedings are "part" of the proceedings in the charging district and that magistrate judges in arresting districts are mere "surrogates" for magistrate judges in charging districts. Congress devised Rule 5(c)(3) proceedings as distinct proceedings that must be conducted in every case where a defendant is arrested outside the charging district, not by virtue of some delegation of authority from the charging district. They are subject to specific rules (such as informing a defendant about the provisions in Rule 20, and conducting an identify hearing), and the magistrate judges there have an independent obligation to, inter alia, conduct a preliminary hearing (if required by Rule 5.1) and bail proceedings, unless the defendant waives them. *See* Fed. R. Crim. P. 5(c)(3)(A)-(D). Rule 5(c) proceedings also conclude upon the transfer of the defendant to the charging district. *See* Fed. R. Crim. P. 5(c)(3)(E).[5] In sum, charging districts have no control over the scope of Rule 5(c) proceedings—they cannot do away with them, limit them, or expand them—so they are not part of the proceedings in the charging district.

But again, whether the Central District proceedings are distinct or part of the Northern District proceedings, the Indictment charges that Ms. Lu submitted a false declaration in *bail proceedings in the Central District.* The location of the relevant judicial proceedings is out of district.

### D. Ms. Lu was not "constructively present" in this district by virtue of her pending fraud prosecution.

Relatedly, the government argues that, at the time Ms. Lu filed the Form CR-37 in the Central District of California, she was "constructively present" in this district because "the CDCA proceedings were a mere extension of the NDCA asylum fraud prosecution and would not have occurred but for that prosecution." Opp. at 2; *see also* Opp. at 6, 7-8 (citing *Hyde v. United States*, 225 U.S.  347, 362 (1912); *Lamar v. United States*, 240 U.S. 60, 65-66 (1916)).

As explained, the very premise of the government's argument (that the Central District proceedings were "part" of the proceedings in this district) is wrong. As importantly, the Supreme Court's decisions do not support the government's expansive "constructive presence" theory.

---

[5] There is more: the proceedings get distinct case numbers; they are governed by different local rules and practices; the United States Attorney's Office and the FPD Office representing many defendants are not the same. And the district court in the charging district may not delegate matters to the magistrate judge in the arresting district for reports and recommendations.

First, *Lamar* involved essential conduct that, unlike here, spanned multiple districts. Lamar was tried in New York for impersonating a Member of Congress via telephone with intent to defraud. 240 U.S. at 64. The Court upheld venue in a single sentence: "The personation was by telephone to a person in New York (southern district), and it might be found that the speaker also was in the southern district; but if not, at all events the personation took effect there." *Id*. at 65. The Court therefore held that venue was proper either because the defendant himself was in New York, or because the essential conduct element of impersonation occurred there because that is where his interlocutors (to whom Lamar misrepresented his identity) were located.[6]

So *Lamar* did not rely on the fiction of "constructive presence," as the government claims. *Lamar* is also distinguishable: Ms. Lu is not alleged to have made her false declaration by communicating with anybody in this district, or that her submission of Form CR-37 was simultaneously made in both the Central District and the Northern District proceedings. Rather, the Indictment alleges that Ms. Lu was physically present in the Central District when she signed and submitted Form CR-37 to the Central District, so her alleged offense was committed and completed upon submission of that form in that district.

*Hyde* is also inapposite. *Hyde* concerned venue for conspiracy – a *sui generis* offense subject to many special rules not applicable to substantive offenses. The Supreme Court held that venue for conspiracy lies not only where the conspiracy was entered into, but also where the overt acts in furtherance of the conspiracy occurred. That is because "a conspiracy is not necessarily the conception and purpose of the moment, but may be continuing" and "[t]he guilty purpose must be put into a guilty act." *Hyde*, 225 U.S. at 363. In other words, the overt acts form part of the proscribed conduct in conspiracy cases. *See id*.; *see also United States* v. *Socony-Vacuum Oil Co.*, 310 U.S. 150, 253 (1940) (overt acts are "part of the 'continuous cooperation' necessary to keep the conspiracy alive."). And because "each conspirator [is] the agent of the others," the Court saw "no reason why a constructive presence should not be assigned to conspirators" for venue purposes. *Hyde*, 225 U.S. at

[6] The statute in *Lamar* required "an overt act that asserts, implicitly or explicitly, authority that the impersonator claims to have." *United States v. Rosser*, 528 F.2d 652, 656 (D.C. Cir. 1976) (Skelly Wright, J.).

363-64, 369.

This case does not involve conspiracy. And *Hyde* does not stand for some overarching theory of "constructive presence." Whatever the justification for that "fiction" in the conspiracy context, the "fiction" "must not be pushed to such a point in the administration of the national law as to transgress the requirement of the Constitution that the trial of crimes shall be held in the state and district where the crimes shall have been committed." *Id*. at 386 (Holmes, J., dissenting).

The government tried a similar tactic in *Abouammo*, but the Court rejected it. Relying on the obstructive intent requirement, government analogized § 1519 to conspiracy and argued that venue should lie wherever an act furthering the offense took place. *See Abouammo*, 146 S. Ct. at 1578-79. The Court swiftly disposed of the argument: "The fundamental problem with that theory is that § 1519 is an independent crime, not an inchoate offense. . . . Rather than define an inchoate offense tethered to a crime of actual obstruction, § 1519 thus spells out a standalone crime for falsifying (and otherwise tampering with) documents. So venue for it must be based on the conduct that § 1519 itself proscribes, not on the conduct another law does." *Id*.

So here. Section 1623 defines a standalone offense of making or using a false material statement or declaration in a court proceeding or ancillary proceeding, so venue must be based on that conduct. The Court should reject the government's fiction that Ms. Lu was present in this district when she was indisputably present in the Central District when she allegedly committed the proscribed conduct.

## II. The Court may not uphold venue on a factual and legal theory not passed upon by the grand jury in the Indictment, which would amount to constructive amendment.

As a last resort, the government argues that venue is proper because Ms. Lu continued her offense in this district. Opp. at 12-13 (citing 18 U.S.C. § 3237(a)). The government claims that "under certain circumstances, a false statement offense can constitute a continuing offense," and that Ms. Lu continued her offense here by "unequivocally reaffirming her false declaration in connection with the 2025 bail review proceedings" before Judge Tse. *Id*. (citing *United States v. Angotti*, 105 F.3d 539, 542 (9th Cir. 1997), and *United States v. Candella*, 487 F.2d 1223, 1227-28 (2d Cir. 1973)).

There are two problem with this argument. The first, *which is dispositive*, is that the Court may not uphold venue on a factual and legal theory not passed on by the grand jury; to do otherwise it would amount to a constructive amendment of the indictment, in violation of Ms. Lu's Fifth Amendment "right to be tried only on the charges set forth in an indictment by a grand jury." *United States v. Shipsey*, 190 F.3d 1081, 1086 (9th Cir. 1999); *see also United States v. Davis*, 854 F.3d 601, 603 (9th Cir. 2017) ("A constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them.").[7]

Here, the grand jury charged only that "[o]n or about September 3, 2024," Ms. Lu "in a declaration under penalty of perjury submitted in a bail proceeding ancillary to the N.D. Cal. proceeding, knowingly made a false declaration. . . ." Indictment ¶ 11. The Indictment specifies that the declaration was a "Form CR-37 under penalty of perjury" submitted in the "C.D. Cal. Proceedings." *Id.* ¶ 8. Nowhere does the Indictment references the 2025 bail review proceedings in this district, nor does it charge that Ms. Lu's offense was committed from "on or about September 3, 2024" *to a date in June or July 2025*. Because the government did not submit this factual and legal theory to the grand jury, it cannot now "change the [the] indictment to suit [his or her] own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes." *United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014) (quotation omitted); *cf. United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000) (fatal variance to prove at trial date not reasonably near the date alleged in the indictment, such as seven-month difference in date).

The second problem with the government's newfangled theory is its reliance on *Angotti* and *Candella*. It is unlikely that *Angotti* has survived *Abouammo*. *Angotti* dealt with 18 U.S.C. § 1014, a

---

[7] A pretrial Rule 12(b)(3)(A)(ii) for lack of venue is limited to the face of the indictment. But the government doesn't argue that the Court must hold a trial to determine any facts regarding the offense *as charged* that might be relevant to venue; instead, it goes outside the indictment to allege facts that occurred *after* the charged offense, to amend the indictment. That is improper.

And while improper and irrelevant, it bears noting that the government here appears to rely upon statements and a pleading by Ms. Lu's *former counsel* – not upon statements by Ms. Lu, let alone any statements by Ms. Lu before the Court in this district that were under oath.

statute that, like § 1519, criminalizes certain conduct committed with the intent to influence certain federal matters. The Ninth Circuit relied on *Angotti* to uphold venue in *United States v. Abouammo*, 122 F.4th 1072, 1092-94 (9th Cir. 2024), and the Supreme Court reversed, holding that mens rea is not conduct and that contemplated effects may not support venue. And *Candella*, which held that venue for a § 1001 offense lies where "the false statements were intended to produce funds," is both inconsistent with *Abouammo*'s rejection of such contemplated-effect theory and the Ninth Circuit's decision in *Fortenberry*, which held that venue for a § 1001 offense only lies where the false statement was made.

Finally, both *Angotti* and *Candella* were factually indistinguishable. In *Angotti*, the Ninth Circuit deemed the defendant's false mortgage application a continuing offense because it was transmitted out of district to the head office of the savings and loan association for approval of the loan. *See* 105 F.3d at 541-42. In *Candella*, the affidavits and bill of lading were transmitted out of district to the main office of the agency that had to process them for reimbursement. *See* 487 F.2d at 1224, 1227-28. But there is no allegation here that the September 3, 2024, Form CR-37 was just received by the Central District and then transmitted to this district for the bail determination. The government's "continuing offense" theory fails as well.

**CONCLUSION**

The government's arguments in support of venue are unavailing. For this reason, as well as the reasons discussed in Ms. Lu's motion, the Court should dismiss the Indictment for lack of venue.

Dated: August 14, 2026

Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

/S

NED SMOCK
Assistant Federal Public Defender